# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREEN LIGHT NATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 17-cv-6370 |
| | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| SCOTT KENT, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER KENT, et al., | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the motion to dismiss filed by Defendants Bruce Richards and Brut Lighting, LLC and Defendant/Counter-Plaintiff Scott Kent (collectively, the "Brut Parties") [25] and the motion to dismiss filed by Plaintiff/Counter-Defendant Green Light National, LLC ("GLN") and Counter-Defendants Christopher Kent, Michael McAlinden, and David Thompson (collectively, the "GLN Parties") [45]. For the reasons set forth below, the motion to dismiss [25] filed by the Brut Parties is granted in part and denied in part. Because GLN's claims against Defendant Richards are dismissed for lack of personal jurisdiction, Richards is not required to answer the complaint or otherwise participate in the Mandatory Initial Discovery Pilot Program. The motion to dismiss [45] filed by the GLN Parties is granted in part and denied in part. The case is set for further status on October 4, 2018 at 9:00 a.m.

I.  **Background**[1]

Plaintiff GLN is a Nevada limited liability company engaged in the business of selling energy-efficient lighting systems to commercial enterprises across the United States. GLN's principal office is located in Chicago, Illinois. In October 2013, GLN hired Scott Kent ("S. Kent") as President of GLN's wholly owned subsidiary Green Light Southeast ("GLSE")—a Delaware limited liability company. S. Kent executed an employment agreement, setting forth the terms his employment (the "2013 Employment Agreement"). Upon execution of the 2013 Employment Agreement, S. Kent was gifted shares equaling 1.3 percent of the outstanding shares in GLN. On January 20, 2015, GLN—through its Principals—decided to restructure the organization and centralize operations of its subsidiaries, including GLSE, by signing a new GLN operating agreement (the "2015 Operating Agreement"). The 2015 Operating Agreement superseded all agreements previously made between the parties relating to its subject matter. On May 20, 2016, S. Kent made a single purchase of additional equity of GLN, paying $3,750 for an additional 0.3 percent ownership stake, such that he then owned 1.6 percent of GLN. He made no additional purchases of equity in GLN.

Sometime in 2016, S. Kent's relationship with GLN and its other members began to deteriorate. According to S. Kent, after his relationship with GLN soured, he learned that GLN engaged in accounting malfeasance and demanded that GLN cleanup its books. In January 2017,

---

[1] For purposes of ruling on each motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Because the Court is ruling on motions to dismiss claims in Plaintiff's complaint and Counter-Plaintiffs' complaint, there currently are competing accounts of the events at issue before the Court. Accordingly, the background section is meant to provide an overview of the case as a whole. The Court addresses specific factual allegations—where relevant—in the analysis section below.

the other members of GLN—Chris Kent ("C. Kent"), Mike McAlinden, and David Thompson—and S. Kent began negotiating the terms of S. Kent's removal as a member of GLN.

On January 17, 2017, S. Kent and Richards submitted Articles of Organization to the Florida Secretary of State, incorporating Brut Lighting, LLC. According to the GLN Parties, S. Kent and Richards continued to contact customers and prospective customers of GLN, alternatively offering lighting goods and services on behalf of GLN and Brut.

On September 1, 2017, GLN filed a complaint [1] alleging that S. Kent and Richards created Brut to compete against GLN in the commercial LED lighting industry (the "GLN Complaint"). The GLN Complaint further alleges that—while still employed by GLN—S. Kent and Richards (individually and on behalf of Brut) used and misappropriated GLN's trade secrets and confidential information, including proprietary computer software, and customer, prospective customer and referral source lists. According to GLN, the Brut Defendants acted to deceive and confuse the general public about their association with—and approval by—GLN. The GLN Complaint brings state and federal claims against the Brut Defendants.

On the same day the GLN Complaint was filed, S. Kent filed a complaint (the "S. Kent Complaint") in the Middle District of Florida, alleging that GLN failed to pay him earned commissions, repurchase his equity shares, and provide payment or establish a commission payment schedule for lighting contracts he arranged for GLN before his departure. The S. Kent Complaint also alleged that the GLN Defendants tortiously interfered with S. Kent's business relationships, prior to, during, and after his employment with GLN.

On October 17, 2017, the action pending in the Middle District of Florida was transferred to the Northern District of Illinois, pursuant to a joint motion by the parties. [17-cv-7528, Dkt. 11.] On October 24, 2017, the parties to both Case No. 17-cv-7528 (the case transferred from the

Middle District of Florida) and Case No. 17-cv-6370 filed a motion to consolidate the two actions [16], which the Court granted. [21.] Before the Court are the motion to dismiss filed by Defendants Bruce Richards and Brut Lighting, LLC and Defendant/Counter-Plaintiff Scott Kent (collectively, the "Brut Parties") [25] and the motion to dismiss filed by Plaintiff/Counter-Defendant Green Light National, LLC ("GLN") and Counter-Defendants Christopher Kent, Michael McAlinden, and David Thompson (collectively, the "GLN Parties") [45].

## II. Legal Standard

When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* showing of jurisdiction. See *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions (as is the case here), a court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in favor of jurisdiction. See *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause

4

of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### III.  Analysis

#### A.  GLN Complaint

##### i.  *Personal Jurisdiction Over Defendant Richards*

Defendant Bruce Richards moves to dismiss GLN's claims against him for lack of personal jurisdiction pursuant to Rule 12(b)(2). This case involves claims under both federal law (*e.g.*, the Lanham Act) and state law (*e.g.*, the Illinois Deceptive Trade Practices Act), so the Court's jurisdiction rests on a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. Because GLN's federal claims do not have special rules for personal jurisdiction, however, the Court looks to the law of the forum for the governing rule. See Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). The Illinois long-arm statute contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. See 735 ILCS 5/2–209(c); see also *Hyatt Int'l*, 302 F.3d at 714.

Under the Due Process Clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

5

463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The "purposeful availment" standard ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

There are two types of personal jurisdiction: general and specific. See *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *Hyatt Int'l*, 302 F.3d at 713. Here, GLN does not assert that the Court has general personal jurisdiction over Richards. The Court's inquiry therefore will focus on specific personal jurisdiction only. To establish specific personal jurisdiction, a plaintiff must show that its claims against the defendant "arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Whether specific personal jurisdiction over a defendant exists depends on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Specific personal jurisdiction exists only if "the defendant's suit-related conduct * * * create[s] a substantial connection with the forum State." *Id*. The "three essential requirements" for establishing specific personal jurisdiction are: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related

activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).[2]

GLN argues that the Court has jurisdiction over Richards because Richards "aimed his intentional conduct to cause a known injury in Illinois[.]" [37, at 5.] Specifically, GLN argues that Richards directed his tortious conduct at GLN (which is based in Illinois) and that he knew that injury would be felt in Illinois. *Id*. at 5-6. However, the "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum state does not suffice to authorize jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). It is not enough that a defendant know that any injury resulting from alleged tortious conduct would be felt in the forum state. *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law."); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), as corrected (May 12, 2014) (knowledge that plaintiff company was based in the forum state (without more) insufficient to establish personal jurisdiction against defendant under the Lanham Act).

In order to establish that a defendant purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, a plaintiff must show that the "defendant [had] 'a substantial connection with the forum state[.]'" *Ariel Investments, LLC*, 881 F.3d at 522 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Such a "connection must be of the defendant's creation, not of the plaintiff's." *Id*. Thus, a plaintiff must allege "injury *and* 'something more' directed at that state before jurisdiction over a foreign

---

[2] Richards does not address the requirement that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. Because GLN has not satisfied the first two requirements for establishing personal jurisdiction, the Court need not analyze this requirement.

7

defendant may be considered proper." *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) (emphasis in original). Here, GLN has not made such a showing. GLN has not alleged any action taken by Richards in Illinois. *Cf. Pentwater Equity Opportunities Master Fund, Ltd. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, 2016 WL 454342, at *7 (N.D. Ill. Feb. 5, 2016) (action directed at Illinois found where defendant's contacts with state—extensive phone conversations and email communications—were intended to induce action that served as basis of fraud claims). Nor has GLN alleged any other "plus" factor sufficient to establish specific jurisdiction.

With respect to GLN's claims relating to Richards's alleged misappropriation of intellectual property, GLN argues that Richards essentially "reached into Illinois" to steal GLN's trade secrets and confidential information. [37, at 6.] In making this argument, GLN cites to *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, in which the court reasoned that the misappropriation of intellectual property of a forum plaintiff is sufficient to establish personal jurisdiction over an out-of-state defendant. The court explained:

> As a matter of policy, the law ought not require a holder of intellectual property * * * in these circumstances to go to the home forum of one who has, in effect, reached into the holder's home forum to take its property. When an out-of-state entity chooses to trade on the established name of an entity in the forum state and use that name for its own gain, it has, in the Court's view, established a relationship not just with the in-state entity, but with the forum state itself.

191 F. Supp. 3d 790, 800 (N.D. Ill. 2016) (quoting *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, slip op. at 5 (N.D. Ill. Oct. 29, 2015)). However, since that case was decided, the Seventh Circuit has rejected the approach taken by the Court in *IPOX*, holding that the alleged misappropriation of intellectual property of a forum-state plaintiff is insufficient to establish personal jurisdiction over a foreign defendant. *Ariel Investments, LLC*, 881 F.3d at 523.

With respect to GLN's intentional tort claims, the same analysis applies. *Ariel Investments, LLC*, 881 F.d at 522 ("These same principles apply when intentional torts are involved." (quoting *Walden*, 571 U.S. at 286)). "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. (quoting *Walden*, 571 U.S. at 285). GLN does not allege that Richards ever visited Illinois or engaged in business in Illinois. Nor does GLN allege that Richards solicited clients in Illinois. In fact, GLN does not allege that Richards took any action at all in Illinois. All of the facts upon which GLN relies to argue that the Court has personal jurisdiction over Richards relate to Richards's relationship with GLN, not Richards's relationship with the state of Illinois. [37, at 4 ("The Complaint alleges that Richards' intentional, tortious conduct was expressly aimed at GLN's business based in Illinois, and through his existing relationship with GLN, he knew that GLN would be injured in Illinois."); ("Richards' intentional, tortious conduct, goes beyond that, and has intentionally inflicted injury upon GLN in Illinois."); 37, at 5 ("The facts here show that Richards expressly aimed his intentional conduct to cause a known injury in Illinois, sufficient to confer jurisdiction.").]

GLN cites to cases finding that extensive phone and email communications and sustained contact with Plaintiff were enough to establish jurisdiction. [37, at 7-8.] However, in those cases, the defendant's in-state conduct related to the claims raised. *Pentwater*, 2016 WL 454342, at *7 (extensive phone and email communications with Illinois entity, which were intended to induce plaintiff, sufficient to establish personal jurisdiction over defendant for fraud related claims); *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 710 (N.D. Ill. 2014) (continued negotiations with Illinois company regarding employment agreement sufficient to establish personal jurisdiction over claim based on alleged breach of non-compete in the employment agreement). Here, GLN has not alleged any actions Richards has taken in Illinois, much less

9

actions taken in Illinois relating to the tort claims against him.[3] Accordingly, the Court grants Richards's motion to dismiss for lack of personal jurisdiction.

>    ii.    *Illinois Deceptive Trade Practices Act (Count II)*

Defendants S. Kent and Brut argue that GLN's Illinois Deceptive Trade Practices Act ("IDTPA") claim against them should be dismissed because GLN has failed to allege wrongful conduct occurring "primarily and substantially" in Illinois. The IDTPA does not expressly confine its application to events or circumstances arising in Illinois. However, a "long-standing rule of construction in Illinois * * * holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). Accordingly, non-residents can only bring a claim under the IDTPA if the alleged wrongful conduct was "primarily and substantially in Illinois."[4] *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 860 (N.D. Ill. 2011). Several factors determine whether wrongful conduct occurred "primarily and substantially" in Illinois, including: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (citing *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005)). But the "standard is not exactly self-defining, and * * * each case must be decided on its own facts, a formula that gives

---

[3] GLN alleges that Richards was an agent of GLN [1, at ¶ 2]. Because GLN cannot establish specific jurisdiction over Richards based solely on Richards's relationship with GLN—as opposed to Richards's relationship with Illinois— this allegation does not establish specific jurisdiction over Richards. Furthermore, the complaint alleges that Richards was hired by S. Kent [1, at ¶ 25], who was employed by GLSE—a Delaware entity and a subsidiary of GLN. [1-1, at 1.] Thus, Richards does not even appear to have been an employee of GLN. GLN also alleges that "Defendants have contacted and attempted to solicit at least one of GLN's customers or prospective costumes or referral sources in Illinois." [1, at ¶ 73.] However, GLN did not rely on this allegation in arguing that the Court has personal jurisdiction over Richards, likely because the complaint does not provide any factual details in support of this assertion.

[4] The parties assume that GLN is a non-resident of Illinois.

the trier of fact substantial latitude and implies deferential appellate review." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (internal quotations omitted).

Here, the first and third factors—especially at the motion to dismiss stage—weigh in favor of finding that the alleged misconduct occurred "primarily and substantially" in Illinois. GLN's main office is in Illinois. [1, at ¶ 73]. GLN alleges that S. Kent and Brut marketed and advertised pictures of GLN's installation projects on Brut's website (which is accessible in Illinois), resulting in irreparably injury to its business, reputation and good will in Illinois. *Id.* at ¶¶ 72-73. This case therefore is unlike the cases relied upon by S. Kent and Brut, in which the maintenance of a nationwide website was the ***only*** connection to Illinois. *Miche Bag, LLC v. Be You, LLC*, 2011 WL 4449683, at *6 (N.D. Ill. 2011); see also *Underground Sols., Inc. v. Palermo*, 2014 WL 4703925, at *10 (N.D. Ill. Sept. 22, 2014) (dismissing IDTPA claim where there were no allegations that plaintiff felt injury in Illinois); *LG Elecs. U.S.A., Inc.*, 809 F. Supp. 2d at 860 (granting motion for judgment as a matter of law where plaintiff failed to introduce any evidence of advertising in Illinois or any evidence of damages in Illinois). Furthermore, it currently is not clear whether and to what extent the second and fourth factors weigh in favor of finding that the alleged misconduct occurred "primarily and substantially" in Illinois. Accordingly, GLN has alleged sufficient facts to preclude dismissal of its IDTPA claim against S. Kent and Brut.

The Court notes that the application of the IDTPA ultimately is a choice-of-law question, *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011), although it was not framed as such by the parties. Thus, even though GLN's IDTPA claim survives, the Court is not conclusively ruling that Illinois law applies. Such a ruling is not necessary—indeed, not appropriate—based on the limited facts currently before the Court at the motion to dismiss stage. In concluding that the

district court improperly dismissed an IDTPA claim at the motion to dismiss stage in *Morrison*, the Seventh Circuit explained:

> Perhaps [the alleged facts are] not enough to *compel* a conclusion that Illinois law applies; * * * But if we can't say that the complaint and answer contain enough to point unerringly to Illinois law, we can say that the complaint does not defeat application of Illinois law. Recall that the district court dismissed the out-of-Illinois plaintiffs' claim under Rule 12(b)(6). It did not take evidence, make findings of fact, or weigh the incommensurable factors in [the] formula; it was not entitled to do any of these things on a motion to dismiss the complaint.

Thus, although the Court is not dismissing GLN's IDTPA claim, the Court is not concluding that Illinois law applies.

### iii. Breach of Employment Agreement (Count IV)

Defendant S. Kent also moves to dismiss GLN's claim against him for breach of his 2013 Employment Agreement (Count IV) based on his contention that his 2013 Employment Agreement with GLN was terminated and superseded by the 2015 Operating Agreement for GLN.[5] The parties agree that the 2015 Operating Agreement provides that it "supersedes all agreements previously made between the parties relating to its subject matter." The parties further agree that—under Illinois law—an earlier contract is superseded by a later contract if (1) both contracts deal with the same subject matter, (2) the two contracts contain some inconsistencies which evince the conclusion that the parties intended for the second contract to control their agreement and to supersede the first contract, and (3) the later contract reveals no intention by the parties to incorporate the terms of the earlier contract. *R&M Trucking-Intermodal, Inc. v. Dr. Miracle's, Inc.*, 2017 WL 3034673, *12 (N.D. Ill. July 18, 2017).

---

[5] S. Kent argues that the Court can consider the 2015 Operating Agreement in ruling on his motion to dismiss because the GLN relied on the Operating Agreement to establish that S. Kent owed GLN a fiduciary duty. [26, at 10 (collecting cases).] GLN has not contested this argument. Regardless, the Court would reach the same conclusion whether or not the 2015 Operating Agreement is considered.

Here, whether the 2015 Operating Agreement superseded the 2013 Employment Agreement is a question of fact that cannot be determined on a motion to dismiss. *Act II Jewelry, LLC v. Wooten*, 2016 WL 3671451, at *4 (N.D. Ill. July 11, 2016) ("Be that as it may, the existence of another Loan Agreement and the determination as to which document governs are questions of fact that cannot be decided on a motion to dismiss."). Accepting all well-pleaded factual allegations and drawing all reasonable inferences in GLN's favor, the Court cannot say that the 2013 Employment Agreement was superseded by the 2015 Operating Agreement as a matter of law. To begin, the agreements were entered into by different parties. *Midland Life Ins. Co. v. Regent Partners I Gen. P'ship*, 1997 WL 361491, *5 (N.D. Ill. June 20, 1997) (agreements executed separately, by different parties, were intended to be separate); *cf. GCIU Employer Ret. Fund v. Chicago Tribune Co.*, 66 F.3d 862, 866 (7th Cir. 1995) (contract entered into by the same parties with the same consideration offered was superseded).

It also is not clear at this stage of the case that the agreements deal with the same subject matter. The 2013 Employment Agreement addresses S. Kent's duties as an employee of GLSE [1-1, at 1-6]. The 2015 Operating Agreement, on the other hand, addresses the operations of GLN. [23-1, at 27-47.] Although S. Kent argues that the agreements contain inconsistent terms, many of the purported inconsistencies fail to acknowledge that GLSE and GLN are not the same entity. For example, S, Kent argues that the agreements contain different terms regarding the method for valuing GLSE. [44, at 12.] However, the cited provision of the 2013 Employment Agreement addresses the valuation of GLSE while the cited provision of the 2015 Operating Agreement addresses the valuation of GLN. *Id*. Regardless, the relationship between the 2013 Employment

13

Agreement and the 2015 Operating Agreement cannot be determined at this early stage of the case.[6]

Finally, the 2015 Operating Agreement specifically references some agreements to be superseded by the 2015 Operating Agreement [23-1, at 28], but does not mention the 2013 Employment Agreement—further suggesting that the parties did not intend for the 2015 Operating Agreement to supersede the 2013 Employment Agreement. This case therefore is unlike cases relied upon by S. Kent, in which the contract at issue was explicitly superseded. *Act II Jewelry, LLC v. Wooten*, 2016 WL 3671451, at *4 (N.D. Ill. July 11, 2016) (dismissing breach of contract claim where the contract at issue was "specifically terminated" by a subsequent agreement stating that it "supersede[d] in entirety any prior written or oral agreements between the Parties"). Accordingly, S. Kent's motion to dismiss GLN's breach of contract claim is denied.

iv. *Tortious Interference with Contract (Count V)*

Defendant Brut moves to dismiss GLN's claim against it for tortious interference with a contract (Count V). Specifically, Brut argues that it could not have tortiously interfered with the 2013 Employment Agreement because it was superseded by the 2015 Operating Agreement. [26, at 11.] While it is appropriate to dismiss a tortious interference with contract claim where the underlying contract is unenforceable, see, *e.g., Snellman v. A.B. Dick Co.*, 1987 WL 8619, at *10 (N.D. Ill. Mar. 24, 1987), as discussed above, the Court cannot say that the 2013 Employment Agreement was superseded by the 2015 Operating Agreement as a matter of law. Accordingly, Brut's motion to dismiss GLN's tortious interference with contract claim is denied.

---

[6] Many of the cases relied upon by GLN were decided at the summary judgment stage. See *Colagrossi v. UBS Sec.*, 2014 WL 2515131, at *3 (N.D. Ill. June 4, 2014) (granting summary judgment); *GCIU Employer Ret. Fund v. Chicago Tribune Co.*, 66 F.3d 862, 865 (7th Cir. 1995) (reversing decision granting summary judgment).

B.  **Counter-Complaint**

   i.  *Tortious Interference (Count III)*

Defendants Christopher Kent, Michael McAlinden, and David Thompson (the "Individual GLN Defendants") argue that S. Kent's Tortious Interference with Advantageous Business Relationship claim (Count III) should be dismissed because he fails to allege that the Individual GLN Defendants acted with sufficient malice. Under Illinois law, "[c]orporate officers normally enjoy protection from personal liability for acts they commit on behalf of the corporation." *Von Der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 866 (7th Cir. 2009); see also *MGD, Inc. v. Dalen Trading Co.*, 596 N.E.2d 15, 18 (Ill. App. Ct. 1992) ("Illinois courts recognize a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations."); *Ali v. Shaw*, 481 F.3d 942, 945 (7th Cir. 2007) ("In the corporate world, officers enjoy immunity from * * * [tortious interference] claims provided that they took the action in pursuit of the legitimate interests of the company."); *Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 866-67 (7th Cir. 2009); *Essex Real Estate Group, Ltd. v. River Works, LLC*, 2002 WL 1822913, at *7 (N.D. Ill. Aug. 7, 2002) (individual defendant broker's conduct, as employee of allegedly interfering brokerage company, was privileged from tortious interference claim due to his employment status); *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 938 (N.D. Ill. 2000) ("Illinois law grants a qualified privilege to corporate officers protecting them from liability for decisions made on behalf of the company."); *6030 Sheridan Rd., LLC v. Wright*, 2011 WL 10068683, at * 8 (Ill. App. Ct. Sept. 30, 2011) (fiduciary privilege applies equally to LLC officers due to their fiduciary duties owed to their LLCs).

However, "[t]he privilege can be abused (and thus lost) if the employer acts maliciously." *Cutler v. Quality Terminal Servs., LLC*, 2012 WL 669052, at *22 (N.D. Ill. Feb. 29, 2012) (citing

*Welch v. Ill. Sup.Ct.*, 751 N.E.2d 1187, 1197 (2001)). "In the context of a suit for tortious interference with a prospective economic relationship, the term 'malicious' * * * means intentionally and without justification." *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993) (citations omitted). A corporate officer "may abuse the privilege, by making unjustified statements, by excessive publication of statements, or by making statements in conflict with the interest which gave rise to the privilege." *Id.* Here, S. Kent alleges that the Defendants Thompson and C. Kent made statements they knew to be false. [40, at ¶ 90 (Thompson), ¶ 97 (Chris Kent).] Thus, S. Kent sufficiently has alleged that Thompson and C. Kent engaged in unjustified conduct (*i.e.*, malicious conduct) sufficient to overcome the qualified privilege afforded to officers and directors under Illinois law. *Delloma*, 996 F.2d at 172 ("If the defendant knew the statements were false, he would be unjustified in making them.").

S. Kent has not, however, sufficiently alleged facts sufficient to show that McAlinden acted with malice. Although S. Kent argues that the Individual GLN Defendants acted to cover up alleged operational failures at GLN,[7] S. Kent does not cite to any allegations in support of this argument. S. Kent does allege that C. Kent and McAlinden engaged in accounting malfeasance but he does not explain how any interference with his prospective business relationships served to cover up any malfeasance.[8] Because S. Kent has not alleged sufficient facts to overcome

---

[7] If S. Kent alleged sufficient facts to show that the Individual GLN Defendants interfered with his business relationships to cover up any malfeasance, such allegations would overcome the Individual GLN Defendants' qualified privilege under Illinois law. *Adams v. Catrambone*, 359 F.3d 858, 865 (7th Cir. 2004) (holding that the privilege does not apply "when the interference was designed to cover up the defendant's theft of corporate assets").

[8] S. Kent also argues that the allegation that the Individual GLN Defendants improperly withheld earnings that he was contractually entitled to receive pursuant to the 2015 Operating Agreement is sufficient to establish malice. But S. Kent fails to explain how any alleged withholding of earnings relates to the Individual GLN Defendants' purported interference with S. Kent's relationship with third-parties. S. Kent is not alleging that the Individual GLN Defendants tortuously interfered with his compensation agreement with GLN. Rather, S. Kent alleges that the Individual GLN Defendants and GLN interfered with S. Kent's prospective business relationship with third parties. *Cf. Krok v. Burns & Wilcox, Ltd.*, 1999 WL 262125, at *7 (N.D. Ill. Apr. 16, 1999) (discussing alleged tortious interference with Plaintiff's compensation agreement).

McAlinden's qualified privilege, S. Kent's tortious interference claim (Count III) against McAlinden is dismissed.

### ii. Illinois Wage Payment and Collection Act (Count V)

Although S. Kent denies that he was an employee of GLN at any time after January 2015, he argues that if the Court finds otherwise, GLN's failure to pay him all compensation due under the parties' agreements constitutes a willful violation of the Illinois Wage Payment and Collection Act. The Illinois Wage Protection and Collection Act (the "Wage Act"), 820 ILCS 115/1 *et seq.*, requires employers to pay "final compensation" to former employees. 820 ILCS 115/5. The term "final compensation" is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. The Wage Act "does not confer any rights to recovery of final compensation in the absence of a contractual right." *Byker v. Sequent Computer Sys., Inc.*, 1997 WL 639045, at *7 (N.D. Ill. Oct. 1, 1997).

GLN contends that S. Kent may not invoke the Wage Act because he is not a resident of Illinois and the Act protects only "employees in this State [Illinois]." 820 ILCS 115/1. GLN's contention fails at this stage of the case. The Wage Act does not have an "extraterritorial reach;" rather, its "evident purpose is to protect employees *in Illinois* from being stiffed by their employers." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (emphasis in original). However, "[t]he Wage Act protects an employee who performs work in Illinois for an Illinois employer, even if he resides in another state." *Adams v. Catrambone*, 359 F.3d 858, 863 (7th Cir. 2004); see also *Vendetti v. Compass Envt'l, Inc.*, 2006 WL 3694852, at *1 (N.D. Ill. Dec. 14, 2006)

17

(Wage Act applies "where an employee has done at least some work for an Illinois employer while physically present in the state of Illinois").

In its response brief, GLN argues that the Wage Act only applies when the employee performed "most of" his work in state. GLN does not, however, identify any case supporting that proposition.[9] Courts generally have allowed plaintiffs to proceed on Wage Act claims at the motion to dismiss stage when they allege that some of their work was performed in Illinois. See *Cohan v. Medline Indus., Inc.*, 2014 WL 4244314, at *4 (N.D. Ill. Aug. 27, 2014) (denying motion to dismiss where plaintiff alleged that he "traveled to Illinois twice per year for meetings lasting three to four days each time"); *Spaulding v. Abbott Labs.*, 2010 WL 4822894, at *6 (N.D. Ill. Nov. 22, 2010) (denying motion to dismiss where plaintiff alleged that he "performed work on [Abbott's] behalf in Illinois" and noting that defendant could re-raise the issue on summary judgment "[i]f the facts adduced in discovery indisputably show[ed] that [plaintiff] did not perform sufficient work in Illinois to warrant coverage under the Wage Act"). S. Kent has made such allegations here. Specifically, S. Kent alleges that "from November 2013 through early January 2017, [he] made approximately 15 trips to Chicago and other locations throughout Illinois to perform work for and on behalf of" GLN and that he "personally made sales visits to approximately 20 actual or prospective GLN customers" during those trips. [40, at ¶ 13.]

GLN argues that such allegations are insufficient, relying on *Cohan v. Medline Indus., Inc.*, which granted defendant summary judgment on plaintiffs' Wage Act claim because plaintiffs "were only actually present in Illinois for, at most, a few days every year" and spent most of their

---

[9] GLN does cite to cases indicating that a plaintiff who performs "most" of his work in-state can bring a Wage Act claim. While these cases recognize that such a showing is sufficient, they do not establish that such a showing is necessary. For example, in *Baxi v. Ennis Knupp & Assocs., Inc.*, the Court denied a motion to dismiss plaintiff's Wage Act claim where plaintiff argued that he performed the "overwhelming majority" of his work in Illinois. 2011 WL 3898034, at *14 (N.D. Ill. Sept. 2, 2011). The Court did not hold, however, that such an allegation was necessary to state a claim.

time in Illinois engaged in training, not actual sales work for which they were employed. 170 F. Supp. 3d 1162, 1175 (N.D. Ill.), aff'd, 843 F.3d 660 (7th Cir. 2016).[10] However, unlike the plaintiff in *Cohan*, S. Kent alleges that he made sales calls during his trips. Furthermore, the evidence in *Cohan* indicated that the plaintiff had only spent three to four days in the state a couple times a year. At this stage, it is unclear to what extent S. Kent conducted work in Illinois.

Regardless, the Court is unwilling to dismiss S. Kent's Wage Act claim without further briefing from the parties. There is some uncertainty regarding "whether, to be covered by the Act, it is enough that the plaintiff 'performs [some] work in Illinois for an Illinois employer,' [and] whether the unpaid portion of the work must have been performed in Illinois."[11] *Baxi*, WL 3898034, at *15 (quoting *Adams*, 359 F.3d at 863). However, as discussed above, courts generally have allowed Wage Acts claims to proceed past the motion to dismiss stage when they allege that some of their work was performed in Illinois. S. Kent has done so here. Accordingly, GLN's motion to dismiss S. Kent's Wage Act claim is denied. If the facts adduced in discovery indisputably show that S. Kent did not perform sufficient work in Illinois to warrant coverage under the Wage Act, GLN may raise this argument on summary judgment.

## IV. Conclusion

For the reasons discussed above, the motion to dismiss [25] filed by the Brut Parties is granted in part and denied in part. Because GLN's claims against Defendant Richards are dismissed for lack of personal jurisdiction, Richards is not required to answer the complaint or

---

[10] In further support of its argument, GLN notes that the district court's summary judgment decision in *Cohan* was affirmed by the Seventh Circuit and argues that *Cohan* therefore is a "precedential opinion [addressing] the amount of work a non-resident employee must perform in Illinois in order for the [Wage Act] to be applicable. [53, at 7.] However, because plaintiff did not appeal the district court's ruling on its Wage Act claim, the Seventh Circuit did not address the issue.

[11] GLN notes that S. Kent does not allege whether he was entitled to receive any compensation (*e.g,.* commissions) from his alleged sales visits in Illinois. [53, at 6.]

otherwise participate in the Mandatory Initial Discovery Pilot Program. The motion to dismiss [45] filed by the GLN Parties is granted in part and denied in part. The case is set for further status on October 4, 2018 at 9:00 a.m.

Dated: September 14, 2018

_____
Robert M. Dow, Jr.
United States District Judge